UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY VAN DIVER,

                Petitioner,                              Case Number 20-11340

v.                                                             Honorable David M. Lawson

NOAH NAGY and
HEIDI WASHINGTON,

                Respondents.

_____/

**OPINION AND ORDER (1) GRANTING THE APPLICATION TO PROCEED WITHOUT PREPAYING FEES OR COSTS, (2) DENYING THE MOTION FOR A TEMPORARY RESTRAINING ORDER, (3) CONSTRUING THE MOTION FOR A TEMPORARY RESTRAINING ORDER AS A MOTION FOR A PRELIMINARY INJUNCTION, AND (4) DIRECTING RESPONDENTS TO FILE AN ANSWER TO THE MOTION FOR A PRELIMINARY INJUNCTION**

Petitioner Jerry Van Diver, a Michigan prisoner, has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. Van Diver also seeks alternative injunctive relief, contending that he has "properly framed his pleading as a civil rights action 'in the alternative,'" based on the conditions of his confinement that amount to a violation of his federal constitutional rights resulting from the confluence of his personal physical health, the congregant living conditions in prison, and the inadequate measures by his jailors to respond to the threat to life and health posed by the novel coronavirus. Van Diver also asks to proceed without prepaying fees or costs and seeks a temporary restraining order (TRO).

Van Diver is a 68-year-old prisoner who is currently incarcerated at G. Robert Cotton Correctional Facility in Jackson, Michigan. He seeks immediate release from custody on his own recognizance because he is at risk of contracting the coronavirus disease (COVID-19). Van Diver has not demonstrated a substantial likelihood of success on the merits of his TRO motion, and

other relevant factors do not entirely favor his release. The Court, therefore, will deny the motion for a TRO, but construe it as a motion for a preliminary injunction and direct the respondents to file a response.

I.

Van Diver alleges that he is an African-American who was born on July 6, 1951. Records maintained by the Michigan Department of Corrections (MDOC) indicate that Van Diver is serving a life sentence without the possibility of parole for first-degree murder.

The habeas petition does not challenge Van Diver's conviction or the validity of the state court judgment of sentence. Instead, Van Diver alleges that his continued confinement in prison puts him at risk of contracting COVID-19 because he shares toilets, sinks, phones, and showers with other prisoners, eats in a communal space, and has close contact with many other prisoners and correctional officers. He maintains that he has an increased risk of contracting COVID-19 due to his age and his chronic illnesses, which include diabetes, Hepatitis C, and heart disease. Van Diver argues that his continued detention violates the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution. He seeks temporary release from confinement during the COVID-19 pandemic due to the substantial risk that COVID-19 allegedly poses to his health.

II.

Van Diver has asked the Court to allow him to proceed without prepaying the fees and costs for this action. According to his financial affidavit and certified statement of account, he received no income from various sources in the past twelve months, he owns nothing of value, and he had no money in his prison trust fund account as of late April 2020. Van Diver will be permitted to proceed *in forma pauperis*.

III.

As noted above, Van Diver seeks habeas corpus relief under 28 U.S.C. § 2241. His petition and motion address the conditions of his confinement, normally the subject of a lawsuit under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *See Lutz v. Hemingway*, 476 F. Supp. 2d 715, 718 (E.D. Mich. 2007). Yet Van Diver argues that there are no conditions of confinement sufficient to prevent irreparable constitutional injury. Therefore, he urges the Court to construe his claim as a challenge to the fact of confinement, not the conditions of confinement. He maintains that temporary release from custody is the only adequate remedy.

The Supreme Court has not foreclosed prisoners from using a habeas petition to challenge the conditions of confinement. In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court stated that a request for immediate release or a speedier release from confinement is "the heart of habeas corpus," *id*. at 498, and that habeas corpus may be available to make a constitutional challenge to prison conditions, *id*. at 499. "When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal." *Id.* at 499. The Sixth Circuit Court of Appeals agrees. "[W]here a petitioner claims that no set of conditions would be constitutionally sufficient the claim should be construed as challenging the fact or extent, rather than the conditions, of the confinement." *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020) (citing *Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011)).

Van Diver alleges that subjecting him to a substantial risk of contracting COVID-19 amounts to punishment unrelated to his criminal conviction and that this violates his rights under the Fifth Amendment. Because he is not challenging his conviction and, instead, is alleging that

he has been placed under an additional and unconstitutional restraint, a habeas corpus petition is appropriate here.

Although 28 U.S.C. § 2254 ordinarily "is the 'exclusive vehicle' of habeas relief for prisoners in custody under a state judgment," § 2241 is a "broader form of habeas relief," "which authorizes federal intervention for state prisoners who are 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Saulsberry v. Lee*, 937 F.3d 644, 647 (6th Cir.) (quoting 28 U.S.C. § 2241(c)(3)), *cert. denied*, 140 S. Ct. 445 (2019). Van Diver is in custody under a state-court judgment, but he is not targeting that judgment or seeking to be released permanently from "custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(b)(1). Van Diver, therefore, may proceed under section 2241. *See Cameron v. Bouchard*, No. 20-1469, Order, p. 3 (6th Cir. May 26, 2020) (unpublished decision stating that section 2241 was "properly invoked" in a COVID-19 case brought in part by prisoners serving a jail sentence).

This case is not subject to summary dismissal under Rule 4 of the Rules Governing Section 2254 Cases, which also apply to petitions brought under § 2241. *See* Rule 1(b) of the Rules Governing Section 2254 Cases.

IV.

Van Diver's habeas petition and motion for a TRO have not been served on the respondents as of today's date. Nevertheless, a TRO may be issued without notice to the opponent. Fed. R. Civ. P. 65(b)(1). A TRO is meant to preserve the status quo until a court can make a reasoned resolution of a dispute. *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996). TROs are of a short duration, and they usually terminate with a ruling on a preliminary injunction. Fed. R. Civ. P. 65(b); *Northeast Ohio Coalition for the Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1005 (6th Cir. 2006). The movant bears the

burden of proving that the circumstances clearly require a restraining order. *Albino-Martinez v. Adducci*, --- F. Supp. 3d ---, No. 20-10893, 2020 WL 1872362, at *1 (E.D. Mich. Apr. 14, 2020).

Rule 65 also governs motions for preliminary injunctions, and the same factors apply to both motions. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). Courts generally consider four factors when determining whether to grant a temporary restraining order: (1) the movant's likelihood of success on the merits, (2) the irreparable harm the movant would suffer absent relief, (3) harm to the public interest if relief were granted, and (4) whether the injunction would serve the public interest. *Northeast Ohio Coalition for the Homeless*, 467 F.3d at 1009 (alterations added). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)). "However, 'the likelihood of success on the merits often will be the determinative factor.'" *Wilson*, 2020 WL 3056217, at *4 (quoting *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)).

A.

A "likelihood" of success on the merits is not established merely by showing "a mere possibility of success." *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (citing *Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261 n.4 (6th Cir. 1977)). But "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Ibid.* (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)).

Van Diver seeks temporary release from custody on his own recognizance until the COVID-19 pandemic is resolved. He recognizes that he is not entitled to release under the Eighth Amendment to the United States Constitution. *See Glaus v. Anderson*, 408 F.3d 382, 387 (7th Cir. 2005) (pointing out that the petitioner's habeas corpus petition was not a proper vehicle for an Eighth Amendment deliberate-indifference claim because release from custody is not an option under the Amendment). Consequently, he brings his claim under the Due Process Clause of the Fifth Amendment. He argues that his continued confinement during the COVID-19 pandemic violates his Fifth Amendment rights either because he has been exposed to COVID-19 or because his exposure to the virus is imminent. He further alleges that, despite the precautionary measures taken by Michigan Department of Corrections (MDOC), he is not ensured anything close to reasonable safety, given his underlying health conditions.

The Due Process Clause of the Fifth Amendment states that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Clause "appl[ies] only to actions of the federal government — not to those of state or local government," *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001), and Van Diver is seeking relief from state officials.

Nevertheless, Van Diver also raises his claim under the Due Process Clause of the Fourteenth Amendment, which states that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Clause affords incarcerated individuals the right to adequate shelter and safe conditions. *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 847-48 (6th Cir. 2002) (citing *Youngberg v. Romeo*, 457 U.S. 307 (1982)).

The petitioner has health concerns, and the Sixth Circuit generally applies the same standard to a claim brought under the Fourteenth Amendment's substantive due process clause as it does for a challenge under the Eighth Amendment. *Cooper v. Montgomery Cty., Ohio Sheriff's Dep't*, 768 F. App'x 385, 391 (6th Cir. 2019) (citing *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001), and *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)). Court decisions interpreting the Eighth Amendment, therefore, provide useful guidance.

It is well established that "[w]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general wellbeing." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation omitted). "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and . . . 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted).

The appropriate analytical framework calls for proof that detention officials were deliberately indifferent to a substantial risk of harm. *Id.* at 837-38. The applicable test has two elements. *Id*. at 834. First, the petitioner must demonstrate that the constitutional deprivation was "objectively, 'sufficiently serious.'" *Ibid*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, he must demonstrate that the detention official had a "sufficiently culpable state of mind." *Ibid*. This element can be proven by circumstantial evidence from which the fact finder can conclude that the state actor perceived the risk, *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001), or "from the very fact that the risk was obvious." *Terrance v. Northville Reg'l Psychiatric Hospital*, 286 F.3d 834, 843 (6th Cir. 2002); *see also Wilson*, 2020 WL 3056217, at *6–*7.

This Court recently acknowledged that "[n]o one can deny that the health risks caused by the [coronavirus] pandemic are grave." *Toma v. Adducci*, No. 20-11071, 2020 WL 2832255, at *4 (E.D. Mich. May 31, 2020). Many courts, including the Sixth Circuit, have observed that

> [t]he COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune [system] compromise. If contracted, COVID-19 can cause severe complications or death. Because there is no current vaccine, the Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing.

*Wilson*, 2020 WL 3056217, at *1; *id.* at *12 (stating that "COVID-19 is not only highly infectious but also devastating to those unfortunate enough to contract it," and that "[t]he likelihood of more severe effects increases dramatically for those who are of an advanced age or who have any number of preexisting conditions, including cardio-vascular disease, respiratory disease, asthma, diabetes, and diseases that compromise the immune system.") (Cole, Chief Judge, concurring in part and dissenting in part).

Van Diver purports to fall within the category of individuals who are at an increased risk of complications from COVID-19 due to his age, heart disease, diabetes, and Hepatitis C. Additionally, he alleges that there have been 500 confirmed COVID-19 cases in MDOC prisons and over 40 deaths from the disease at the Cotton Correctional Facility. Accepting these facts, it is possible that Van Diver is incarcerated under conditions posing a substantial risk of serious harm.

The MDOC, however, has taken many preventative measures to prevent the spread of COVID-19. Among other things, MDOC has developed "isolation areas to place and treat prisoners who have tested positive for COVID-19 or who are under investigation for having

COVID-19, as well as those who have had close contact with a known-positive COVID-19 individual."  MDOC Director's Office Memorandum 2020-30R3, at 1 (May 27, 2020).

Other measures taken by MDOC to address COVID-19 include the use of personal protective equipment, the screening of individuals before entering its facilities, social distancing, giving nasal swab and antibody tests to inmates who pass through a reception and guidance center, making alcohol-based hand sanitizer and wipes available to staff, and decreasing the number of individuals allowed in the gate area.  Prisoner visits have been suspended temporarily, and attorneys are encouraged to speak with their clients by telephone instead of conducting in-person visits.  Large in-person gatherings of people have been cancelled, and restrictions have been placed on transfers, cell moves and, to some extent, educational classes and programming.  Adequate soap must be provided to prisoners, and bleach may now be used and stored in housing units.  Medical appointments have been postponed, and the number of prisoners allowed to attend a meal at one time has been reduced.  *See id*. at 1-9.

It does not appear that MDOC officials have disregarded the grave risk to inmate health or safety posed by the novel coronavirus.  The Sixth Circuit and its sister circuits, in fact, have found similar measures to be reasonable responses to serious risks of harm and to the risks posed by COVID-19.  *Wilson*, 2020 WL 3056217, at *8-*9.  Van Diver, moreover, has not pointed to any specific inadequacies in the preventative measures undertaken by MDOC.  He also has not shown that MDOC officials are ignoring his high-risk status, that they are incapable of protecting him and others from contracting COVID-19, or that they are unwilling or unable to care for him if he does become infected.

The MDOC appears to have responded reasonably to COVID-19.  Therefore, Van Diver has not shown that his substantive right to due process has been violated.  Although he may have

a possibility of success on the merits, he does not have a substantial likelihood of prevailing on his due process claim.

B.

To demonstrate irreparable injury, Van Diver must show that, unless he is immediately released, he will suffer actual and imminent harm rather than speculative or unsubstantiated harm. *Albino-Martinez*, 2020 WL 1872362, at *4 (citing *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006)). The denial of injunctive relief "will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights." *Overstreet*, 305 F.3d at 578; *see also Obama for Am.*, 697 F.3d at 436 ("When constitutional rights are threatened or impaired, irreparable injury is presumed"). But if a court finds it unlikely that a plaintiff will succeed on the merits of a constitutional claim, the "argument that he is entitled to a presumption of irreparable harm based on the alleged constitutional violation is without merit." *Overstreet*, 305 F.3d at 578.

Van Diver contends that he will suffer irreparable injury absent a TRO because his health conditions put him at risk of contracting COVID-19 and he could suffer the loss of health or life if he contracts the virus. He also contends that the respondents underestimate the seriousness of the risks associated with COVID-19.

The Sixth Circuit has "not turn[ed] a blind eye to prison conditions when the treatment prison officials provide in response to a serious medical need is 'so woefully inadequate as to amount to no treatment at all.'" *Wilson*, 2020 WL 3056217, at *13 (Cole, Chief Judge, concurring in part and dissenting in part) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). Nevertheless, Van Diver's concern that he will contract COVID-19 does not support the remedy he seeks, because if he were released from a controlled environment where measures have been taken to prevent the spread of COVID-19, he would likely "encounter . . . a civil society

-10-

experiencing tens of thousands of cases." *Murai v. Adduci*, No. 20-10816, 2020 WL 2526031, at *5 (E.D. Mich. May 18, 2020).

Furthermore, it appears unlikely that Van Diver will face an immediate and irreparable injury absent a restraining order in light of the significant preventative measures taken by MDOC to prevent the spread of COVID-19. The irreparable-injury factor weighs in favor of the State.

C.

The third and fourth factors are considered together, because "the harm to the opposing party and the public interest factors 'merge when the Government is the opposing party.'" *Wilson*, 2020 WL 3056217, at *11 (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The same rule applies when the State is the opposing party. *See Crutsinger v. Davis*, 936 F.3d 265, 271 (5th Cir. 2019) (substituting "state" for "the Government" when quoting *Nken)*; *Jackson v. Leake*, 476 F. Supp. 2d 515, 530 (E.D. N.C. 2006) (stating that, "[b]ecause state officials are the parties against whom the injunction is sought, and they represent the public interest, consideration of the harm to them should the injunction issue merges with consideration of the public interest").

Van Diver correctly asserts that "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm.*, 23 F.3d 1071, 1079 (6th Cir. 1994). He also contends that being incarcerated promotes the spread of communicable diseases like COVID-19 and that the continued incarceration of aging or ill prisoners does not serve the public's interest.

Van Diver has not outlined any housing plans or security measures that could be implemented if he were released. He also has not explained how he would care for himself and manage his medical conditions if the Court ordered his temporary release. On the other hand, even though he committed a horrific crime and is serving the State's harshest penalty (life imprisonment

without any possibility of parole), he is almost 69 years old, and he appears to have served approximately thirty-nine years in prison. According to the United States Sentencing Commission,

> "[r]ecidivism rates decline relatively consistently as age increases." Recent analysis from the Bureau of Justice Statistics considering the recidivism rates of released prisoners in 30 states (including Michigan) from 2005 to 2010 supported the Commission's conclusion, finding decreased recidivism rates as prisoners age. These statistics suggest that past fifty years old there is a significantly lower rate of recidivism. Both the Guidelines and [the Sixth] Circuit's cases explicitly acknowledge that a defendant's age, and specifically old age, is a relevant consideration in sentencing. U.S.S.G. § 5H1.1; *United States v. Berry*, 565 F.3d 332, 341 (6th Cir. 2009); *United States v. Davis*, 537 F.3d 611, 616-17 (6th Cir. 2008). And observers of the criminal justice system have long acknowledged the "key" argument "that elderly offenders pose so low a risk to the public that long or otherwise harsh sentences have little to no utilitarian benefit." Indeed, they observe that "because of health or other reasons, elderly offenders have the lowest rate of recidivism of all types of offenders; in fact, only about one percent of elderly offenders ever face a second conviction." *Id.* Studies indicate that neurotransmitters affecting aggression supplied at the synapses of brain neurons vary based on age, and may explain the observed decline in recidivism among older prisoners.

*United States v. Payton*, 754 F.3d 375, 378-79 (6th Cir. 2014) (footnotes omitted); *see also United States v. Adams*, 873 F.3d 512, 519 (6th Cir. 2017) (stating that "a recent study by the U.S. Sentencing Commission found that recidivism rates for offenders over the age of sixty—both violent and non-violent — are the lowest among all age groups" ) (citing U.S. SENTENCING COMM'N, RECIDIVISM AMONG FEDERAL OFFENDERS: A COMPREHENSIVE OVERVIEW 10, 23 (2016), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/researchpublications/2016/recidivism_overview.pdf.) The third and fourth factors balance against each other.

V.

Although some factors weigh in Van Diver's favor, on balance, the four TRO factors tend to favor the State and weigh against granting a temporary restraining order without notice. However, Van Diver should be have the opportunity to furnish more fulsome evidence of the harm

that might befall him resulting from the conditions of his confinement and the impact of the current pandemic on prison operations and the state's response.  !

Accordingly, it is **ORDERED** that the application to proceed without prepaying fees and costs (ECF No. 2) is **GRANTED**.

It is further **ORDERED** that Van Diver's request for a temporary restraining order (ECF No. 3) and emergency supplemental request for a TRO (ECF. No. 6) are **DENIED in part**.

It is further **ORDERED** that Van Diver's motion for a TRO will be considered as a motion for a preliminary injunction.

It is further **ORDERED** that the Clerk of Court shall serve the following documents on the respondents and the Michigan Attorney General:  the habeas corpus petition, Van Diver's emergency motion for a TRO, and a copy of this order.

It is further **ORDERED** that the respondents shall file an answer to the implied request for a preliminary injunction **on or before August 27, 2020**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   August 13, 2020