UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY VAN DIVER,

         Petitioner,                         Case Number 20-11340

v.                                                       Honorable David M. Lawson

NOAH NAGY and
HEIDI WASHINGTON,

         Respondents.
_____/

**OPINION AND ORDER DENYING PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION AND DISMISSING HABEAS CORPUS PETITION WITH PREJUDICE**

Petitioner Jerry Van Diver, a Michigan prisoner, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. Van Diver also seeks injunctive relief, contending that he has "properly framed his pleading as a civil rights action 'in the alternative,'" based on conditions in prison that violate his federal constitutional rights. Pet. at 6, 11, ECF No. 1, PageID.6, 11. He contends that the violation of his rights results from the confluence of his personal physical health, the congregant living conditions in prison, and the inadequate measures taken by the respondents in response to the novel coronavirus.

Van Diver is a 69-year-old prisoner serving a life sentence for murder. He currently is incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan, which is designated as JCF by the Michigan Department of Corrections (MDOC). Respondent Noah Nagy is the warden. Respondent Heidi Washington is Director of the MDOC. In his habeas petition and in a motion for a temporary restraining order, Van Diver seeks temporary release from custody on his own recognizance because, in his opinion, the coronavirus disease (COVID-19) poses a substantial risk to his health and life.

On August 13, 2020, the Court denied Van Diver's motion for a temporary restraining order, construed the motion as a motion for a preliminary injunction, and directed the respondents to file an answer to the motion for a preliminary injunction. The respondents have filed their answer, and according to them, Van Diver has failed to establish a basis for granting a preliminary injunction. Van Diver has filed a reply to the response in which he reiterates most of the arguments he asserted in his petition and motions. However, the Court agrees with the respondents that Van Diver is not likely to succeed on the merits of his deliberate-indifference claim; he has not shown that he will suffer irreparable injury absent the Court's intervention; and both the public interest and that of MDOC weigh against granting an injunction. For similar reasons, Van Diver has failed to show that his right to substantive due process is being violated or that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Therefore, the Court will deny the motion for a preliminary injunction and dismiss the habeas petition with prejudice.

I. Background

Van Diver is an African American who was born on July 6, 1951. He is serving a life sentence without the possibility of parole for first-degree murder, but the habeas petition does not challenge Van Diver's conviction or the validity of the state court's judgment of sentence. Instead, he alleges in his habeas petition, in his motion for injunctive relief, and in a supplemental motion for injunctive relief that his continued confinement in prison puts him at risk of contracting COVID-19 and of becoming ill or dying because he shares toilets, sinks, phones, and showers with other prisoners, eats in a communal space, and has close contact with many other prisoners and correctional officers. He maintains that he has an increased risk of contracting COVID-19 due to his age and his chronic illnesses, which include diabetes, Hepatitis C, and heart disease. Van Diver

argues that his continued detention violates the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution. He seeks temporary release from confinement during the COVID-19 pandemic due to the substantial risk that COVID-19 allegedly poses to his health.

## II.  Discussion

In another case spawned by the pandemic, the United States Court of Appeals for the Sixth Circuit recently explained that, when determining whether to grant a preliminary injunction,

> "[a] district court must balance four factors . . . : '(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.' " *Am. Civil Liberties Union Fund of Mich. v. Livingston County*, 796 F.3d 636, 642 (6th Cir. 2015) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012)). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

*Wilson v. Williams*, 961 F.3d 829, 836-837 (6th Cir. 2020); *accord Perez-Perez v. Adducci*, , 459 F. Supp. 3d 918, 924 (E.D. Mich. 2020), *appeal filed*, (6th Cir. July 10, 2020).

### A.  Likelihood of Success on Merits

The likelihood of success on the merits often will be the determinative factor in an assessment of a motion for a preliminary injunction, and "the party seeking a preliminary injunction bears the burden of justifying such relief." *Wilson*, 961 F.3d at 837 (citations omitted). The likelihood of success on the merits is not established by showing "a mere possibility of success." *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (citing *Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261 n.4 (6th Cir. 1977)). But "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Ibid.* (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)).

Whether one views the initiating document in this case as a habeas corpus petition under 28 U.S.C. § 2241 or a civil rights complaint under 42 U.S.C. § 1983, Van Diver must establish a violation of his rights emanating from the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States"); 42 U.S.C. § 1983 (providing a cause of action against state actors for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws"). He brings his claim under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, arguing that his continued confinement during the COVID-19 pandemic violates his Fifth Amendment rights either because he has been exposed to COVID-19 or because his exposure to the virus is imminent. He further alleges that, despite the precautionary measures taken by MDOC, "he is not ensured anything close to 'reasonable safety'" because of his underlying health conditions.

The Due Process Clause of the Fifth Amendment "appl[ies] only to actions of the federal government — not to those of state or local government," *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001), and Van Diver is seeking relief from state officials. The Due Process Clause of the Fourteenth Amendment, however, states that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Clause affords incarcerated individuals the right to adequate shelter and safe living conditions. *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 847-48 (6th Cir. 2002).

Van Diver has health concerns, and the Sixth Circuit generally applies the same standard to a claim challenging adequacy of medical care brought by incarcerated individuals under the Fourteenth Amendment's substantive due process clause as it does for a challenge under the Eighth Amendment. *Cooper v. Montgomery Cty., Ohio Sheriff's Dep't*, 768 F. App'x 385, 391 (6th Cir.

2019) (citing *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001), and *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)). Court decisions interpreting the Eighth Amendment, therefore, provide useful guidance.

1. Eighth Amendment Framework

It is well established that "[w]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general wellbeing." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation omitted). "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones . . . .'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citation omitted).

The applicable test has two elements. *Ibid*. at 834. First, the prisoner must demonstrate that the deprivation alleged is "objectively, 'sufficiently serious.'" *Ibid*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Ibid*. Second, the prisoner must demonstrate that a prison official had a "sufficiently culpable state of mind." *Ibid*. (citing *Wilson v. Seiter*, 501 U.S. at 297). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Ibid*. This element can be proven by circumstantial evidence from which the fact finder can conclude that the state actor perceived the risk and then disregarded the risk, *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001), or "from the very fact that the risk was obvious." *Terrance*, 286 F.3d at 843.

a. Objective Component

This Court recently acknowledged that, "[n]o one can deny that the health risks caused by the [coronavirus] pandemic are grave." *Toma v. Adducci*, No. 20-11071, 2020 WL 2832255, at *4 (E.D. Mich. May 31, 2020). Many courts, including the Sixth Circuit, have observed that

> [t]he COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune [system] compromise. If contracted, COVID-19 can cause severe complications or death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing.

*Wilson*, 961 F.3d at 833; *see id.* at 845 (noting that "COVID-19 is not only highly infectious but also devastating to those unfortunate enough to contract it," and that "[t]he likelihood of more severe effects increases dramatically for those who are of an advanced age or who have any number of preexisting conditions, including cardio-vascular disease, respiratory disease, asthma, diabetes, and diseases that compromise the immune system") (Cole, Chief Judge, concurring in part and dissenting in part).

Despite the risks posed by COVID-19, Van Diver has failed to show that he is incarcerated under conditions posing a substantial risk of serious harm. He purports to fall within the category of individuals who are at an increased risk of complications should they contract COVID-19 due to his age, heart disease, diabetes, and Hepatitis C. He also alleges that there have been 500 confirmed COVID-19 cases in MDOC prisons and over 40 deaths from the disease at the Cotton Correctional Facility.

Van Diver exaggerates the impact of COVID-19 at JCF. According to respondent Nagy, less than 100 inmates residing on Van Diver's side of the facility tested positive for COVID-19,

and six, not forty, prisoners at JCF died from COVID-19. Further, two of the six inmates who died had transferred to JCF from other prisons. Nagy Affidavit, ECF 13-2, PageID.185-186.

Further, the MDOC has taken many steps to prevent the spread of COVID-19 in its prisons. Among other things, the MDOC has developed "isolation areas to place and treat prisoners who have tested positive for COVID-19 or who are under investigation for having COVID-19, as well as those who have had close contact with a known-positive COVID-19 individual." MDOC Director's Office Memorandum 2020-30R6, p. 1 (Aug. 27, 2020) (effective immediately), www.michigan.gov/documents/corrections/dom_2020-30r6_final_700917.7.pdf. Other measures taken by the MDOC to prevent the spread of COVID-19 include the use of personal protective equipment, the screening of individuals before they enter its facilities, social distancing, securing prisoners' personal property, making alcohol-based hand sanitizer and wipes available to staff, and decreasing the number of individuals allowed in the gate area. *See id.*, pp. 1-4. Prisoner visits were suspended temporarily, and attorneys are encouraged to speak with their clients by telephone instead of conducting in-person visits. *Id.*, p. 4. Large in-person gatherings of people have been cancelled, and restrictions have been placed on transfers, cell moves and, to some extent, school classes and programming. *Id.*, pp. 5-7. Adequate soap must be provided to prisoners, and bleach may now be used and stored in housing units. *Id.*, p. 7. The number of prisoners allowed to attend a meal at one time has been reduced, and prisoners who eat in a dining hall must stand at least six feet apart while waiting in line to receive their meal and then sit six feet apart at sanitized tables. *Id.*, p. 8. Other activities also have been suspended or postponed. *Id.*

As of May 12, 2020, when respondent Washington signed an affidavit, the MDOC had taken even some unprecedented actions in response to the pandemic. The MDOC has:

> ● provided over 152,000 reusable cloth masks to staff and prisoners and continues to ensure that all staff and prisoners received three washable masks to use;

● used non-traditional areas, such as gyms, to cohort prisoners who are under investigation for COVID-19, have had close contact with a COVID-positive person, and prisoners going through "stepdown;"

● reduced the number of prisoners housed in communal living arrangements to the extent feasible to promote social distancing;

● purchased and installed portable showers for prisoners in non-traditional areas to minimize the movement of prisoners through housing units and to avoid contact with other prisoners;

● established a COVID-positive response unit separated from housing units in some prisons;

● provided COVID testing at all facilities in accordance with CDC guidelines;

● performed mass testing of prisoners at some facilities, including JCF;

● begun to develop a COVID-19 testing plan for staff;

● assessed and closely monitored prisoners who are under investigation for having COVID-19, who have been in close contact with a known-positive COVID-19 individual, and who are "step-down;"

● tried to safely reduce its prison population;

● opened closed facilities to isolate prisoners who tested positive for COVID-19, who are under investigation for COVID-19, and who have had close contact with infected individuals; and

● expedited the review of parole-eligibility inmates

Washington Affidavit, ECF No. 13-5, PageID.309-317. There is no evidence before the Court that the MDOC has backed away from those measures.

These actions demonstrate that the MDOC has responded reasonably to the risk posed by COVID-19. *See Wilson*, 961 F.3d at 841 (concluding that similar measures taken in a federal prison showed a reasonable response to the risk posed by COVID-19). Van Diver, in fact, states in his motion for injunctive relief that he "does not take issue with the steps taken by MDOC" to mitigate the risk of the MDOC prisoners contracting COVID-19.

The extent of these measures also demonstrates that the threat of COVID-19 infections potentially poses a serious harm to inmates. However, the MDOC's mitigation efforts confirm that it has responded appropriately to the danger of infections, which undercuts the notion that Van Diver "is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

### b. Subjective Component

Van Diver also has not shown that the respondents have a culpable state of mind and are ignoring his high-risk status. The measures taken by the MDOC demonstrate respondent Washington's concern for the health and welfare of Michigan prisoners. In addition, respondent Nagy avers in a recent affidavit that, as warden at JCF, he has personal knowledge of the measures that were implemented to prevent the spread of COVID-19 at JCF. Nagy Affidavit, ECF No. 13-2, PageID.187. Although JCF houses over 460 prisoners with chronic medical conditions, less than 100 inmates on the side of the facility where Van Diver resides tested positive for the coronavirus, and there have been no COVID-19 deaths in Van Diver's housing unit. *Id*., PageID.186. According to Nagy, the MDOC's response to COVID-19 is constantly evolving to reflect changes in CDC guidelines. *Id*., PageID. 187.

Nagy acknowledges that, in late June or early July 2020, four or five prisoners in the F-Unit where Van Diver resides tested positive for COVID-19. *Id*., PageID. 188, 191. Those inmates, however, were removed from the unit, and the rest of the inmates in the F-Unit were quarantined and tested for the coronavirus. *Id.*, PageID.188-189, 191. As of August 5, 2020, all the prisoners in the F-unit tested negative, and the unit was cleared for normal operations. *Id.*, PageID.190-191. Van Diver later informed Nagy that he (Van Diver) did not think the quarantine

was necessary and that he did not consider himself at risk of getting COVID-19 because he was tested several times and the results were negative each time. *Id*., PageID.192.

Nevertheless, many measures were taken to protect the inmates in the F-Unit, and Nagy continues to ensure compliance with MDOC's COVID-19 protocols. *Id.*, PageID.193-195, 198. He makes daily rounds through the facility and ensures that prisoners have the supplies they need and that COVID-19 protocols are enforced. *Id*., PageID.198-199. He maintains that JCF is meeting and exceeding CDC guidelines and is complying with applicable COVID-19 risk-reduction protocols. *Id*., PageID.200.

### 2. Failure of Proof

Prison officials are not required to "take every possible step to address a serious risk of harm." *Wilson*, 961 F.3d at 844. It is evident in this case that the MDOC promptly responded to concerns about COVID-19 and continues to monitor the conditions in its prisons and update its protocols. MDOC officials have not disregarded an excessive risk to inmate health or safety, and its actions have not been so ineffective as to constitute deliberate indifference to the serious risk of harm presented by COVID-19. Therefore, Van Diver's substantive due process rights have not been violated, and he would not have a substantial likelihood of prevailing on his due process claim if his case proceeded.

This conclusion is dispositive, because the Sixth Circuit's "'cases warn that a court must not issue a preliminary injunction where the movant presents no likelihood of merits success.'" *Wilson* 961 F.3d at 844 (quoting *Daunt v. Benson*, 956 F.3d 396, 421–22 (6th Cir. 2020) (quoting *La.-Pac. Corp. v. James Hardie Bldg. Prod., Inc.*, 928 F.3d 514, 517 (6th Cir. 2019)). The Court, nevertheless, will address briefly the remaining factors.

B. Irreparable Injury

The second factor is irreparable injury to the moving party absent the injunction. The Sixth Circuit has stated that, "[w]hen constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012). However, because Van Diver has not shown that his constitutional right to due process was, or is being, violated, he is not entitled to a presumption of irreparable harm. *See Overstreet*, 305 F.3d at 578. To demonstrate irreparable injury, he must show that, unless he is released soon, he "will suffer 'actual and imminent harm' rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006).

Van Diver contends that he will suffer irreparable injury absent a preliminary injunction because his health conditions put him at risk of severe complications should he contract COVID-19 and he could suffer from a loss of health or life. He also contends that the respondents underestimate the seriousness of the risk associating with COVID-19. For example, Van Diver contends that respondent Nagy did not require social distancing in JCF's health-care unit and that prison officials denied Van Diver's requests for medical treatment and a special diet. Supplemental Mot., ECF No. 6, PageID.109-110. Van Diver also alleges that he received no face mask to protect him from COVID-19. *Id.*, PageID.110-111.

Respondent Nagy denies these allegations. He states that he would never deviate from CDC guidelines about social distancing or from MDOC protocols for COVID-19. He also states that the health unit at JCF has signs reminding prisoners to maintain social distancing and that Van Diver has received at least six washable face masks. Nagy Affidavit, ECF No. 13-2, PageID.195-197. Nagy does not recall speaking with Van Diver about a special diet, and he maintains that he would have referred Van Diver to the health unit if he had a health problem. *Id.*, PageID.197.

Furthermore, although Van Diver's age and health conditions may put him at a greater risk of complications from the coronavirus than the general population, Nagy points out that Van Diver is confined in a single cell where social distancing is not an issue, and he has limited contact with correctional officers. *Id.*, PageID.185, 192, 194. In addition, Van Diver and the other individuals in his unit no longer eat in a communal dining room; they practice social distancing when lining up to receive their meals and then they return to their cells to eat. *Id.*, PageID. 193. Although Van Diver does share toilets, sinks, phones, and showers with other prisoners, those areas and items are cleaned and disinfected regularly, and both cleaning supplies and disinfectants are readily available for prisoners to use before and after use of those areas or items. *Id.*, PageID.193-194. The respondents' affidavits demonstrate that Van Diver is unlikely to suffer actual and imminent harm absent an injunction granting him release from prison. Thus, the irreparable-injury factor weighs in favor of the respondents.

### C. Harm to Others and Pubic Interest

The third and fourth factors — harm to the opposing party and the public's interest — are considered together and "'merge when the Government is the opposing party.'" *Wilson*, 961 F.3d at 844 (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The same rule applies when the State is the opposing party. *See Crutsinger v. Davis*, 936 F.3d 265, 271 (5th Cir. 2019) (substituting "state" for "the Government" when quoting *Nken*); *Jackson v. Leake*, 476 F. Supp. 2d 515, 530 (E.D. N.C. 2006) (stating that, "[b]ecause state officials are the parties against whom the injunction is sought, and they represent the public interest, consideration of the harm to them should the injunction issue merges with consideration of the public interest").

Van Diver correctly asserts that "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm.,* 23 F.3d

1071, 1079 (6th Cir. 1994). And governments have an interest in protecting public health and safety. *See Neinast v. Bd. of Trustees of Columbus Metro. Library*, 346 F.3d 585, 592 (6th Cir. 2003) (acknowledging "the legitimate government interest[] of protecting public health and safety"). But it is not necessarily true, as Van Diver contends, that being incarcerated promotes the spread of communicable diseases like COVID-19 and that the continued incarceration of aging or ill prisoners does not serve the public's interest. MDOC has demonstrated that it can prevent the spread of COVID-19 in its prisons, even among aging and chronically ill prisoners.

The public, moreover, has an interest in ensuring that prisoners like Van Diver can care for themselves, have a safe place to live, and will not return to criminal activities upon release. *See Wilson*, 961 F.3d at 844-45 (noting that the district court did not address these concerns). Although Van Diver is willing to wear an ankle device to monitor his movements if he is released, he has not stated where he would live if he were released, and he has not demonstrated that he can care for himself or obtain medical assistance outside prison walls.

Furthermore, Van Diver is serving a life sentence that does not allow for release, even on parole. *See* Mich. Comp. Laws § 750.316(1). "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.,* 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers). Thus, preventing MDOC from enforcing its penal statute proscribing premeditated murder would constitute irreparable harm. *See Maryland v. King*, 567 U.S. 1301, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) ("That Maryland may not employ a duly enacted statute to help prevent [serious] injuries constitutes irreparable harm.").

"The equities and public interest likewise generally weigh in favor of enforcing duly enacted state laws." *Strange v. Searcy*, 135 S. Ct. 940, (2015) (Thomas, J., dissenting from the

denial of an application for a stay). "[C]ourts cannot assume that state legislatures and prison officials are insensitive to the requirements of the Constitution or to the perplexing sociological problems of how best to achieve the goals of the penal function in the criminal justice system: to punish justly, to deter future crime, and to return imprisoned persons to society with an improved chan[c]e of being useful, law-abiding citizens." *Rhodes v. Chapman*, 452 U.S. 337, 352 (1981).

Finally, Van Diver's concern that he will contract COVID-19 does not support the remedy he seeks, because if he were released from a controlled environment where measures have been taken to prevent the spread of COVID-19, he could encounter "a civil society [ ] experiencing tens of thousands of cases." *Murai v. Adducci*, 461 F. Supp. 3d 599, 608 (E.D. Mich. 2020). He could then become infected with COVID-19 through contact with persons in his community or with individuals setting up and monitoring his ankle device and further spread the infection. *Albino-Martinez v. Adducci*, 454 F. Supp. 3d 642, 650 (E.D. Mich. 2020). Therefore, even though the Court stated in its previous order that the third and fourth factors balance against each other, the Court concludes on further reflection that the third and fourth factors weigh in the respondents' favor. Moreover, the risk to the petitioner if he were released today in Michigan is dramatically higher at present than it was even at the conclusion of the briefing on his motion for a preliminary injunction, considering the recent, and so far unabated, dramatic increase in community spread of the virus in this state. *See* Coronavirus Daily Case Statistics: United States — Michigan, https://www.worldometers.info/coronavirus/usa/michigan/ (reporting seven-day average daily new case counts ranging from 6,100 to more than 7,600 throughout November 2020).

### III. Conclusion

The preliminary injunction factors favor the respondents and weigh against granting a preliminary injunction. For similar reasons, Van Diver has not shown that his right to substantive

due process is being violated or that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). To paraphrase the conclusion in *Wilson*, the MDOC

> has not turned a blind eye or deaf ear to a known problem that would indicate . . . a lack of concern for [Van Diver's] welfare. [The MDOC] has in fact put in place and updated its protocols to address the novel risks from COVID-19. The [MDOC's] steps to prevent and mitigate COVID-19 spread at [JCF] are . . . reasonable responses to this serious risk.

*Wilson*, 961 F.3d at 844.
!
Accordingly, it is **ORDERED** that Van Diver's requests for a preliminary injunction (ECF No. 3, 6) are **DENIED**.

It is further **ORDERED** that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date: December 8, 2020